IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES E. DUNMORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3: 16-CV-171-MAB |
| | ) |
| LOUIS SHICKER, PHIL MARTIN, | ) |
| ILLINOIS DEPARTMENT OF | ) |
| CORRECTIONS, and JOHN B. COE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Currently pending before the Court is the motion to reconsider filed by Defendant Illinois Department of Corrections ("IDOC") (Doc. 112). The IDOC asks the Court to reconsider its previous decision denying summary judgment on Plaintiff's claim under the Americans with Disabilities Act and the Rehabilitation Act (Count 2) (Doc. 112; *see also* Doc. 111). The IDOC also asks the Court to reconsider its previous decision granting Plaintiff leave to formally amend his ADA/Rehab Act claim to include allegations regarding the terrain at Lawrence and the bathroom in Plaintiff's cell (Doc. 112; *see also* Doc. 111). The latter request is moot because Plaintiff opted not to amend his complaint (Doc. 113). The former request is denied because the law is clear and the Court remains convinced that its analysis thoroughly outlined in its previous Order is correct.

The Court has inherent power to reconsider interlocutory orders at any time prior to the entry of final judgment. *E.g., Marconi Wireless T. Co. of Am. v. United States*, 320 U.S.

1, 47–48 (1943); *Terry v. Spencer*, 888 F.3d 890, 893 (7th Cir. 2018); FED. R. CIV. P. 54(b). That being said, the Court's prior rulings "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Berger v. Xerox Ret. Income Guar. Plan*, 231 F. Supp. 2d 804, 820 (S.D. Ill. 2002) (citing *Rhone–Poulenc, Inc. v. Int'l Ins. Co.*, 877 F.Supp. 1170, 1173–74 (N.D. Ill. 1995)). Reconsideration of an interlocutory order is only appropriate when a court has misunderstood a party, made a decision outside the adversarial issues presented to the court by the parties, made an error not of reasoning but of apprehension, or where a significant change in the law or the facts has occurred since the submission of the issue to the court. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). *See also Entm't USA, Inc. v. Moorehead Commc'ns, Inc.*, 897 F.3d 786, 795 (7th Cir. 2018) ("[M]otions to reconsider exist to spare parties and courts unnecessary appeals.") "Such problems rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee*, 906 F.2d at 1191.

To recap, the purpose of the ADA is to ensure *equal* treatment, *equal* opportunity, and *equal* access so that individuals with disabilities are fully integrated and able to participate *in all aspects* of society and to *live independently* (Doc. 111, pp. 30–35). The IDOC is obligated under the ADA to provide "reasonable accommodations" to ensure that disabled individuals can access the benefits of the programs, services, and activities that it offers (Doc. 111, pp. 30–35). When it comes to facility access, because Lawrence Correctional Center was built after the ADA took effect in January 1992, the reasonable accommodation requirement is satisfied by strict compliance with specific architectural

accessibility standards (*Id.*). *Tennessee v. Lane*, 541 U.S. 509, 532 (2004); 28 C.F.R. § 35.151(a)(1). Those standards require that if an exterior toilet is provided, it must comply with certain specifications in order to make the toilet fully accessible (Doc. 111, p. 33).[1] Deviating from the specific standards may be permissible only "when it is clearly evident that equivalent access to the facility . . . is provided" (Doc. 111, pp. 30–35). 28 C.F.R. § 35.151(c)(1). Equivalent access means equal or greater access for the disabled individual than the prescribed accessibility standards would provide. *Clemons v. Dart*, 168 F. Supp. 3d 1060, 1069 (N.D. Ill. 2016) (citing 28 C.F.R. § 35.151(c)(1)); *Flora v. Dart*, No. 15 C 1127, 2017 WL 2152392, at *5 (N.D. Ill. May 17, 2017) (citing *Caruso v. Blockbuster-Sony Music Entm't Ctr. at Waterfront*, 193 F.3d 730, 739 (3d Cir. 1999)).

Plaintiff is wheelchair bound (Doc. 111, p. 4). There is a portable toilet on the yard at Lawrence Correctional Center, but it is not wheelchair accessible (Doc. 111, pp. 11–14; Doc. 112, p. 5). It is undisputed that by providing a toilet on the yard to only non-disabled inmates, the IDOC failed to comply with the ADA's accessibility standards (Doc. 111, pp. 29–36). The IDOC nevertheless asserted that it did not violate the ADA because Plaintiff was provided with "sufficient accommodations," in particular Plaintiff could ask a guard to take him back into the cell house to use the indoor toilet (Doc. 85, pp. 14–15; *see also* Doc. 111, pp. 11–14; Doc. 112, p. 5).[2] Plaintiff presented undisputed testimony, however,

---

[1] These specifications include, for example, the height of the toilet, the location and height of grab bars, toilet paper dispensers, flush controls, mirrors, operation of the door, and the amount of clear floor space required (Doc. 111, p. 33).

[2] The IDOC also claims that the inmate could have their ADA attendant take them back into the cell house to use the restroom (Doc. 112, p. 5). The IDOC does not, however, cite to any evidence in the record to

that there were instances where he was not able to get a guard's attention or they refused to escort him inside (Doc. 111, pp. 11–14, 34–36). Plaintiff also presented undisputed testimony that there were instances where guards would not allow him to go back out to the yard after he was finished using the restroom (*Id.*). Furthermore, if a non-disabled inmate had to use the restroom while out on the yard, they simply went to the portable toilet and then resumed their activities on the yard, without ever having to notify a guard or request assistance (*Id.*). The Court concluded that based on the evidence submitted by the parties, a question of fact existed as to whether Lawrence provided disabled inmates with equivalent access to the restroom while out on the yard (*Id.*). In reaching this conclusion, the Court cited to three district court cases that all held equivalent access did not exist where disabled individuals had to request and rely on assistance from another person to use the restroom but non-disabled people did not (*Id.*).[3]

---

support that assertion (*see id.*). The Court notes that the IDOC made the same assertion in their motion for summary judgment (Doc. 85, p. 14), and cited to Plaintiff's deposition in support (*Id.* at p. 7, *citing* Doc. 85-1, p. 123). However, in his deposition, Plaintiff simply affirmed that he could "use" his ADA attendant "for going to chow, going to yard, helping type your legal papers, all kinds of things . . . ." (Doc. 85-1, p. 123). Plaintiff did *not* indicate that he was free to have his ADA attendant wheel him back and forth between the cell house and the yard whenever he had to use the restroom (*see* Doc. 85-1). The IDOC has not pointed to, and the Court is unaware of any evidence to that effect, most notably evidence from a prison official that such a practice was authorized (*see* Doc. 85, Doc. 112). Furthermore, Plaintiff testified that there were stretches of time when he did not have an attendant, including the times when he wet himself on the yard (Doc. 85-1, p. 133).

[3] *See Clemons v. Dart*, 168 F. Supp. 3d 1060, 1066 (N.D. Ill. 2016) (denying summary judgment where inmate was housed in non-ADA-compliant cell but had access to around-the-clock nursing care because "requiring [inmate] to rely on nursing assistance, rather than providing the means for [inmate] to address his own basic needs" does not constitute equivalent access); *Roberts v. Dart*, No. 16 C 5560, 2018 WL 1184735, at *4 (N.D. Ill. Mar. 7, 2018) (denying summary judgment where inmate was housed in non-ADA-compliant cell but could ask officers to let him out of his cell to use the toilet in the dayroom because "requiring him to first obtain the permission of the correctional officers" to use the bathroom "rendered him completely dependent on others" and "no reasonable fact finder could determine this constituted equivalent access."); *Tyler v. City of Manhattan*, 857 F. Supp. 800, 819 (D. Kan. 1994) (finding arrangement where disabled

In its motion to reconsider, the IDOC rehashes its argument that, although there was no accessible portable toilet on the yard, a reasonable accommodation was nevertheless provided to Plaintiff because Lawrence had a policy requiring guards to escort disabled inmates from the yard to their cell house when they had to use the bathroom and then take them back out to the yard when they were finished (Doc. 112, p. 6). The IDOC once again observes that Plaintiff only wet/soiled himself three times in a two-year period and that Plaintiff only complained about one or two correctional officers (whom Plaintiff cannot even identify) not following the policy (*Id.*). The only new aspect of the IDOC's argument is its attempt to distinguish one of the three cases cited to by the Court (Doc. 112, p. 6; *see also* Doc. 85). In particular, the IDOC claims that *Roberts v. Dart*, No. 16 C 5560, 2018 WL 1184735 (N.D. Ill. Mar. 7, 2018) is different than the case at hand (Doc. 112, p. 6). The IDOC's entire argument is as follows:

> [The p]laintiff in *Roberts* was confined to a cell without an ADA accessible toilet. [Roberts] had to flag down a guard to go to the day room every time

---

individual was required to request a key to use the only accessible bathroom did not comport with Title II).

The Court has since found two other cases that reached the same conclusion. *Bowers v. Dart*, No. 16 CV 2483, 2017 WL 4339799, at *6 (N.D. Ill. Sept. 29, 2017) (denying summary judgment where disabled inmate was housed in non-ADA-compliant cell but given a portable toilet chair, a nurse to assist with using the chair, and access to a communal ADA-compliant toilet upon request because accommodations did not allow him "to use the jail's facility independently or similarly to how a non-disabled person would use similar facilities."); *Flora v. Dart*, No. 15 C 1127, 2017 WL 2152392, at *6 (N.D. Ill. May 17, 2017) (denying summary judgment where disabled inmate was housed in non-ADA-compliant cell but had 24-hour access to nurses and was allowed to leave his cell to use ADA-compliant toilet in dayroom because the accommodations "required him to get assistance from a nurse or an officer in order to use the bathroom . . . and thus rendered him completely dependent on others to perform [this] necessary activit[y].") The summary judgment order in *Flora* was later vacated, not because the decision was problematic or incorrect, but because the IDOC insisted on the order being vacated as one of the terms of its settlement with the plaintiff. *See Flora v. Dart*, No. 15 C 1127, 2018 WL 2765919, at *1 (N.D. Ill. June 9, 2018).

> he needed to use the restroom. There was testimony [that the defendants] frequently failed to allow Roberts to leave his cell to use the day room facilities. Furthermore, *Roberts* was completely dependent on others daily to use the dayroom facilities. In the case at hand, Plaintiff admitted he was able to be brought back into the cell house to the use the facilities and he also admitted he only soiled himself three times in a two[-]year period. The case at hand did not involve a daily issue as the *Roberts* case did.

(*Id.*).

The IDOC's argument, stated differently, is that the accommodation in *Roberts* did not pass muster because the plaintiff needed assistance from guards to get to the bathroom multiple times a day, and such assistance was frequently not provided. In contrast, the IDOC believes the accommodation at issue here was acceptable because Plaintiff only needed assistance to get to the bathroom a handful of times per week, and such assistance was almost always provided.

The Court is unpersuaded by the IDOC's argument and its attempt to distinguish *Roberts*. The Court has always understood and appreciated the factual distinctions between the instant case and *Roberts* but determined that those distinctions were not outcome-determinative at the summary judgment stage. It is important to note the IDOC's argument rests on an assumption that equivalent access to the bathroom can be achieved by implementing a policy that requires guards to render assistance to disabled inmates and escort them to an ADA-compliant bathroom. In other words, according to the IDOC, the policy itself is fine and problems only arise in the application of the policy. But the court in *Roberts* explicitly held otherwise. *See Roberts*, 2018 WL 1184735, at *4. There was a problem with the application of the policy because the guards disobeyed it,

but there was also a problem with the policy itself — "even if Defendants had consistently provided [the plaintiff] with access to the dayroom-toilet, requiring him to first obtain the permission of the correctional officers to do so rendered him completely dependent on others to be able to use a toilet. . . . [N]o reasonable fact finder could determine this constituted equivalent access . . . [and] there is no genuine dispute of material fact that Defendants denied access to a toilet to Roberts on a basis equal to non-disabled persons." *Id.* Stated differently, a policy requiring disabled inmates, but not non-disabled inmates, to rely on staff assistance to access the toilet is fundamentally inconsistent with the ADA and does not provide equivalent access to the bathroom regardless of whether the policy was consistently adhered to. *See supra* pp. 4–5, n.2. The IDOC ignored this crucial aspect of the *Roberts* decision (*see* Doc. 122).

As other courts have explained, the ADA accessibility standards ensure that disabled inmates have access to a toilet they are able to use independently in the same manner as non-disabled inmates. *Flora*, 2017 WL 2152392, at *6. Therefore, deviations from the ADA's structural requirements would only be permitted if the alternative still allowed disabled inmates to use the toilet independently. *Id.*; *see also Clemons*, 168 F. Supp. 3d at 1069; *Bowers*, 2017 WL 4339799, at *6. But a policy that requires disabled inmates to rely on staff assistance to get to the toilet strips disabled inmates of their ability to independently use the toilet and renders them completely dependent on others to do so. A reasonable jury could therefore find that such a policy does *not* provide disabled inmates with equivalent access to the bathroom, and summary judgment for the IDOC is

not appropriate. *Clemons*, 168 F. Supp. 3d at 1069; *Flora*, 2017 WL 2152392, at *5; *Bowers*, 2017 WL 4339799, at *6.

Alternatively, even if the Court assumed, like the IDOC does, that such a policy could *in theory* provide disabled inmates with equivalent access to the toilet, the Court would still have to consider whether the policy *in practice* actually did so. In other words, did the guards sufficiently adhere to the policy so that disabled inmates were able to use the toilet as needed? A number of factual issues would bear on this question, including the frequency with which Plaintiff had to rely on assistance from guards to use the bathroom, the availability of the guards' assistance, and the number of occasions when Plaintiff was entirely excluded from using the bathroom. Here, it is undisputed that there were at least three instances over the course of two years where Plaintiff was unable to get a guard's attention or the guards refused to escort him inside, and Plaintiff wet himself as a result. Based on the simple fact there were instances when Plaintiff was completely excluded from using the toilet while out on the yard, a reasonable jury could certainly find that the policy as implemented and practiced at Lawrence did not provide disabled inmates with equivalent access to the toilet. Summary judgment for the IDOC is therefore not appropriate.

For these reasons, the IDOC's motion to reconsider (Doc. 112) is **DENIED in part and MOOT in part**. It is denied as to the request to reconsider the denial of summary judgment on Count 2. It is moot as to the request to reconsider granting Plaintiff leave to amend Count 2. This matter will be set by separate order for a status conference to discuss

scheduling the Final Pretrial Conference and jury trial.

**IT IS SO ORDERED.**

**DATED: May 19, 2020**

<u>s/ Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**